Mr. Bratton. Thank you. May it please the Court, I'm Scott Bratton. I represent the petitioner in this case, Peng Fei Ye. Mr. Ye's case comes before the Court after the Immigration Judge and Board of Immigration Appeals denied his request for asylum withholding of removal and relief under the Convention Against Torture. For the reasons that I'll address today and we addressed in the briefs, the agency's decisions in this case are not supported by substantial evidence. I'll point to four flaws that I see in the agency's decisions in this case that I'll address this morning. Number one, the agency's decisions never adequately or properly address the other resistance aspect of my client's asylum claim. Let me cut you off, but isn't that contrary to the decision in YNI 1613 Federal 3rd at 428 and 429, rejecting the argument that the husband had demonstrated persecution based on his wife's forced abortion due to psychological harm, et cetera, et cetera? This case is significantly different than that, and the issue in that case is not the exact same thing we're raising here. We concede that under a matter of JS, that a wife's forced abortion alone cannot constitute a basis for asylum for the spouse that's in the United States. And that was a change in the law in 2008, and in fact, the law changed after the judge had granted withholding of removal in this case. But that's not our contention that he's per se eligible for asylum based on the fact that his wife had a forced abortion. Instead, what the court is required to do after a matter of JS is look at whether the asylum applicant can prove past persecution for failing or refusing to undergo the sterilization procedure or for other resistance to a coercive population control program, or if the person has a well-founded fear that he will be sterilized or will be persecuted for failing, refusing, or otherwise resisting a coercive population control program. In the Nee case, there was no other resistance. The Nee case, the facts are far different than what we were presented with here, and in the Nee case, this court upheld the decision in JS saying that there's no per se eligibility for asylum based on forced abortion or sterilization of the spouse. But in this case, the first point I want to address is the other resistance aspect of the agency's decisions. In this case, we would submit that the agency did not conduct any analysis as to whether Mr. Yee's actions constituted other resistance and simply concluded that this was the case. There was no attempt by the board or the immigration judge to explain what types of acts would constitute other resistance to the coercive population control program. And Mr. Yee's entitled to a reasoned analysis of his case, and in fact, that this was not done in this case. The board's decision in MWF and LG, which is at 24 INN decision 633, does discuss what resistance is for purposes of the other resistance prong of the statute. The board in that case at page 638 states that other resistance must be assessed against the failures or refutals to comply with official demands to adhere to the birth planning policy. The board also made clear it doesn't require active or forceful opposition to the family planning laws. And then the board went on to give some examples, including removing an IUD or failing to attend a mandatory family planning checkup. And in that case, the board stated that it looks at whether the acts would thwart the goals of the family planning policy and would be viewed with disfavor by Chinese officials implementing the plan. And in this particular case, we would submit that Mr. Yee's actions do constitute other resistance. Unfortunately, there's absolutely no analysis by the immigration judge or the board of immigration appeals as to why his acts wouldn't constitute other resistance to the family planning laws. In fact, the agency simply states that the wife's abortion isn't sufficient for him to gain asylum, but there's much more to that as the board set forth in matter of JS. In this particular case, after having a child, the family planning authorities went to Mr. Yee's residence, and he and his wife were there at the time, and they were told they're not permitted by the government to have any more children. And she was taken away to have an IUD forcibly inserted into her. Tell me how you can convert that to past persecution against Mr. Yee. Well, in this particular case- I mean, that's what we're dealing with, isn't it? Whether or not he was subjected to past persecution? Correct, but I don't think in reading the decisions of the immigration judge or the board, they ever actually made it to that part because of their finding on the other resistance. Both the board and immigration judge found there was no other resistance. And to get to the part of finding that there's past persecution or a well-founded fear of persecution, you have to get to the, you know, there has to be other resistance. But to answer your question, I would submit that in this particular case, we have his wife, who was forced to have an IUD inserted on two occasions. I understand all that. I'm trying to connect that to the past persecution of Mr. Yee. I understand what his wife went through. Yeah, and in this particular, or in matter of JS, the board made clear that the past abortion of a spouse is a relevant consideration in determining whether there's been past persecution for other resistance. The board and immigration judge never addressed this aspect of the case. Additionally, in this particular case, they lost a child, the IUD was forcibly inserted on two occasions. They were both forced to move away from where they lived, and there was threat of sterilization in the future if they violated the family planning law again. And this is what ultimately led my client to come to the United States. So we would submit that those acts when- Hadn't he returned to China twice since coming to the United States? Not since coming to the United States. Prior to his arrival to the United States, he returned to China on two occasions. On the first occasion, he was brought to the United States by a snakehead, and the arrangements weren't made properly for him to get into Mexico, so he went back to China for a very short period of time. And then he was returned to China on another occasion, I believe, by the authorities in Hong Kong. But once he's come to the United States, he has not left. How about when he went to Paris and came back to Mexico, or came back to China, but there was nobody there to pick him up? When was that? That was his first attempted trip to the United States. He was trying to come to the United States three, he made three attempts. The last attempt was successful, but the first two were not. And that was the first time he tried to come at the start of the year 2002, which was approximately three or four months after his wife's forced abortion. So he has not left the United States since that time. I'd like to get back to an aspect of Judge Hamilton's question to you. Do you claim that you have past persecution? That has been claimed in the, that was an argument that was raised in the case. What's the evidence of past persecution? And don't forget, it has to be persecution in the past that's post-resistance. Correct. Do you agree with that? What is it? As far as the persecution in the past, the first resistance in the case was when they had the IUD removed. Okay, what's the persecution after that? After the IUD was removed, his wife became pregnant and she had forced, they moved away. Both of them moved. They weren't forced out, they moved. They moved because they were fearful that if his wife's pregnancy was discovered that one or both of them would be subject to persecution. Okay, what's the persecution then? The persecution is that they moved. She had the abortion, which is part of matter of JS. So he's forced to live where he doesn't want to live. And then at that point, she has- The persecution is that he was hiding? No, that's part of the claim. We have to look at everything in the aggregate. No, I'm breaking that up because you have to show if past persecution was post-resistance. The resistance was removal of the IUD. You're saying the only evidence of persecution was they moved because they were fearful. They moved, then his wife has the forced abortion. Then she has to get another IUD inserted. And then at that point, they're told if you violate the family planning law again, and he testified credibly that he wanted to have more children, then one of you will be sterilized. And then he ultimately fled the country. So the claim raised below was that all of those in the aggregate would constitute persecution. But going back to my point earlier, I don't think the board or immigration judge ever got to that point. In reading their decisions, they never addressed whether there was harm that amounted to persecution on account of resistance because they never found that there was any resistance in the first place. I think that in this particular case, if there is found to be resistance or that the agency's decision was flawed in that respect, the case would have to be remanded to address both the past persecution claim and whether there's a well-founded fear of persecution on account of the resistance. Because in this case, the decision's flawed in finding that there was no resistance. Those acts, when taken together, clearly show that there was resistance on the part of Mr. Yee. And so I would submit that that aspect of the decision is wrong. I also want to point out that in the immigration judge's first decision, she states that the petitioners come to the attention of the authorities because of his failure in the past to work with his wife and adhere to the one-child policy. Again, that goes to show that there's resistance in this particular case. And unfortunately, in the second decision of the immigration judge, in looking at what the Board of Immigration Appeals says, that it's just a conclusion. There was no resistance, but there's no analysis of why these actions of my client wouldn't constitute resistance. And that's a fundamental flaw in this particular case. I follow what you're saying, the analysis. But analysis would be based upon some evidence to analyze. And so I'm trying to figure out, what are you saying is the resistance? They had a child, then after that, the IUD was inserted, correct? Correct. And then they removed the IUD, correct? Correct. And then they had a child. Correct. Or no, they tried to, she got pregnant and they didn't have that child. In other words, she was pregnant. Yes. And then she had a forced abortion. Correct. Now, that would be her claim. But now, what part shows his resistance? I mean, the fact that he continued to have relations with his wife after they removed the IUD? Or what's the resistance? Well, the resistance was that they made a decision, we want to have another child, after they were told by government officials, you can't have another child. So they go and they get the IUD removed. After they get the IUD removed, she gets pregnant. And instead of reporting for their family planning checkups and staying where they're living, where their household register is, they both relocate to different areas so that they won't be discovered by officials in China. I think that that clearly shows that there was other resistance. And unfortunately, there's absolutely no analysis of any of this in the immigration judge's decision and in the board's decision, the board's decision on this issue is two sentences. If that's the case, wouldn't there be resistance on the part of the husband in every case? It's no different than before the law changed. You participate by having a relationship with your wife. She became pregnant almost in every case because you removed the contraceptive. And then you move around, you're fearful. What's the difference in the change of the law? Well, not in every case, there's not an IUD inserted in someone in China. There's many cases where there's not an IUD. The person becomes pregnant with the second child, and they're not necessarily resisting the law. They just become pregnant, and then they find out later it's a violation of the family planning law. Aren't you resisting the law when you have sex with your wife after you've had one child, and you don't use a contraceptive? That's resistance, isn't it? Well, it depends on what the family planning law is in that particular area of China, whether the person even knows that the family planning law in that area of China would prevent them from having a second child. In this case, it goes beyond that because they were actually told by the government, you can't have this child, what the change in the law was is it said there's no per se eligibility for asylum when a spouse has an abortion or is sterilized. In this case, that's not what we're arguing. And when he shows that there has been other resistance, the law still requires him to show that he was persecuted or will be persecuted, and it has to be on account of that. That's where the change in the law comes in. I think that the other resistance part has been met in this case, and the agency didn't address those other issues. The decision is brief, and the board's decision barely mentions any of this. It's just a conclusion. So I would submit that in this particular case, that the other resistance has been met, and that a remand is appropriate to address the other aspects. The other issue I just briefly want to address- Let me interject one thing, if you would, please. Isn't it true that when he was asked by the immigration judge, what would happen if he returned to China? He didn't mention the population control measures, but stated that he was afraid of being punished for enlisting a snake head to help him depart, isn't that true? That is what the record states, and with respect to that, it doesn't go to his past persecution claim, but it does go to the future persecution claim. But with respect to that, at the time that he was applying for asylum back in, I believe that hearing was in 2006, the law was, if his wife had an abortion, he wins his case. And in fact, he did win his case. The attorney didn't ask any follow-up questions, such as, are there any other reasons that you fear returning to China? Which, if they would have, I think clearly would have said that he fears being sterilized, that was part of his case. But I think that the attorney didn't do that, because at the time, it was reasonable to think I'm going to win this case, because I've shown that my wife was forced to have an abortion in the past. And when the case came back on remand from the Board of Immigration Appeals, one of the points that we made in the brief was that he wasn't given an opportunity for an additional hearing. And in fact, the judge said there won't be any additional hearings in this case, other than the master hearing, where she said she was going to issue a decision. And she actually said she wouldn't accept any additional evidence, although they did consider the passport. But in this case, he wasn't given the opportunity to address the change in the law with matter of JS, as far as the future persecution claim goes. That issue was raised with the Board of Immigration Appeals, and the board did not address that in its decision. So as we state in our brief, that's another basis we believe that a remand is appropriate. If there's no further questions, I'll reserve my remaining time for rebuttal. Thank you. Mr. Robbins? May it please the court, Johnathan Robbins here again on behalf of the respondent, Eric Holder. As you've just discussed, the major issue in this case is whether or not the record compels reversal of the agency's finding that Petitioner didn't present any evidence establishing he showed other resistance to the coercive population control policies in China. And as your honors have noted, two very important points. Your honor has noted that there's no evidence to demonstrate other resistance. And your honor noted that Yee Nee is controlling in this matter. This case pretty much mirrors the court's decision in Yee Nee, which would seem to foreclose the arguments that he's making before this court. The notion that the agency didn't analyze the issue of other resistance just simply isn't accurate. The immigration judge talks at length about how this really isn't a case of other resistance, but it's a case of the petitioner having his wife undergo this forced abortion.  The immigration judge's decision discusses that. And as your honor noted, there's not much analysis when there isn't any evidence to analyze. And under the standard of review, again, I don't want to beat a dead horse, but does the record compel a contrary conclusion? Where there's no evidence that he resisted the policy whatsoever, I don't see how this court could say that the record compels a conclusion that the agency was wrong in determining there was not other resistance. Well, what would other resistance need to be then, other than removing the IUD, leaving the country? Well, that would be determined on a case by case basis, and the board has spoken to that. Certainly, there have been situations where people who have undergone forced abortion or husbands of people who have undergone forced abortions have specifically expressed their, gotten into fights with Chinese officials, things of that nature. There's a plethora and basically unlimited set of circumstances where somebody could establish other resistance. But what we know based on case law does not establish other resistance is simply a desire to have another child or having another child. That's what the case law says, and that's what this case is essentially. It is simply a desire to have another child with no other resistance whatsoever, no other evidence beyond that. So, I mean, it would seem that the case law is pretty clear on this point. Again, Yee is basically mirrors this case, and that's been decided, has basically decided the issues in this case with respect to, I guess unless there are any other arguments, I think that pretty much is the long and short of it. Unless the court has any specific questions with respect to this. Mr. Yee's wife remained in China after she had the problem, and he left China in May of 1902. At least that was the last time he saw his wife. 1902? Yeah. I mean, 2002. 2000, okay. What's happened to him after that? To petitioner, to the actual petitioner himself? Yeah. Since leaving China, in China or in the United States? Well, did he come back to China after he left in 2002? Well, yes. He returned there twice. And again, the notion that, you know, my colleague suggested that the notion that he was forced to move against his will is persecution. Being forced to move is not persecution. In fact, the law specifically allows for a relocation exception in cases of persecution that would prevent somebody from getting relief. The first time he returned, was he subjected to any, lack of a better term, any persecution, any harassment by the Chinese government? No. Second time? No. Not by the Family Planning Council or anything like that? No. And he hadn't seen his wife since 2002? I don't remember exactly when the last time he saw his wife was. What's happened to her? Is she still in China? That's my understanding from the record, yes. All right. Thank you. And again, as Your Honor noted, the reason that he gave to the immigration judge wasn't that he feared persecution based on the record. It was that he said he was afraid of the snake head, what would happen if he returned to China based on fear of what the snake head would do. So again, I'll leave it at that and request that the court- Do you recall the dates that he was back in China after he left in 2002? Just a moment. I don't recall them offhand. I'll have to find on the record, this may take a second. Well, I can dig it out of the record. That's fine. I don't recall offhand what the exact dates were. So with that said, we would respectfully request that the court deny the petition for review and uphold the decision of the Board of Immigration Appeals. Thank you for your time, Your Honors. Thank you, Mr. Robbins. Brett. Do you recall the times that Mr. Yee was back in China after he left in 2002 and returned on two occasions? Yeah, it was sometime at the start of 2002 when he left the first time, and the second time was that he went back until May. I'm not sure the record's clear on the exact date he left the first time, but he went back to China until May. His second attempt was in May. May of 2002. 2002, and his third attempt, I believe, was either at the end of May or start of June of 2002, so it was a very short period of time. The record's not clear where he was residing during that period of time, and I think, again, that some of that goes back to, at the time, if his wife had a forced abortion, he was entitled to asylum or withholding of removal, and, in fact, he did get withholding of removal in this case. All right. He left in 2002. When did he come back to China? Soon after he left in 2002. His trip was short because the arrangements weren't made for him. That was the first time. First time. I want to know the second time. Second time was May. It sounds like it may be a week or two weeks. I don't think the record's clear on that point, how long he was outside of China. All right. Was he subjected to any harassment from the Family Planning Bureau or the Chinese government on either one of those times when he came back to China? The record does not indicate that he was. I mean, again, the record's not clear on that, and it goes back to under matter of JS, or before matter of JS, there was no reason to really get into all of those issues because, at that time, he could establish eligibility, and there were no questions asked about any of that during that period of time. I would respectfully disagree that this case is on point with the Ni case. The Ni case, there certainly couldn't be said to be any other resistance. In that case, the IUD was dislodged. There was no affirmative act to take out the IUD, as we have in this case, and additionally, it doesn't appear there were any threats that you weren't allowed to have any more children. So the other resistance aspect of the case is entirely different than in the Ni decision, so I would submit that. In Ni, was the IUD inserted by the government? I believe it was, yes. Well, implicitly, it's a command that you don't have children, isn't it? Well, in that case, I believe the testimony was they weren't planning on having children. They didn't realize the IUD had been dislodged, so there was no affirmative step to resist, although the ultimate action may have resulted in that it wasn't intentional. I believe that was part of what this court said in the Ni case. In this particular case, we do have evidence of other resistance, and although there wasn't an opportunity to present that after the JS decision, the original 2006 hearing shows that there was evidence, which I had discussed previously. Matter of MWF, which is a board case that talks about other resistance, doesn't require that there be some sort of encounter with family planning officials when they're taking the wife away for abortion or anything like that. In fact, it says it doesn't require active or forceful opposition. The examples I give in that case include removing an IUD or failing to attend a mandatory family planning checkup. I think under the board's precedent decisions on this particular issue that my client clearly established other resistance, and I disagree with the argument that this was addressed. It was just summarily dismissed that the wife had an abortion. She was the one that was harmed, and we're not going to address anything else. In fact, MFW was not even cited in either decision, either the board's decision or the IJ's decision, and there's no legal standard or anything addressed for what would constitute other resistance in the case. So I would submit that in this particular case that the other resistance aspect of the case, the decisions were flawed. We would submit that the board and IJ failed to adequately address this issue and that the record compels a conclusion that there was other resistance in the case. We would also, as argued in the briefs, argue that there were past persecution or the well-founded fear of persecution, but we submit that the analysis of those issues was flawed because they never actually made it past the other resistance aspect of the case. So for the reasons I've set forth today and the reasons that we set forth in our brief in this case, we would ask that the court grant the petition for review and remand the case to the board. Would you describe that resistance as passive? In this case, I wouldn't describe the resistance as passive in light of the fact that they were told, you can't do this, and they went out and did do that. I understand, but is there any evidence in the record that they protested it, that they protested the abortion, they protested the putting in of the IUD? The only part in the record is that the wife did not want to go get the IUD inserted. There is that testimony that she was upset that she had to go do that, but there's not a lot of testimony as to the exact circumstances because at the time it wasn't important. It became important later, and they weren't given the opportunity. When the judge said she didn't want a further hearing in the case, they weren't given an opportunity to present that evidence. But I do believe that the other resistance as reflected in this record that the court has before it does show that it meets the standard that the board set forth in MFW, and we would submit the petition should be granted in this case. Thank you. Thank you. We'll come down to Greek Council, and first we'll ask for a brief recess, and then we'll come down to Greek Council. This court will take a brief recess.
judges: Roger L. Gregory, Stephanie D. Thacker, Clyde H. Hamilton